HOWE v DETROIT FREE PRESS, INC

Docket Nos. 90042, 90043. Argued December 3, 1991 (Calendar No. 1).
Decided July 14, 1992.

Virgil M. and Barbara K. Howe brought an action in the Wayne
Circuit Court against the Detroit Free Press and others, alleg-
ing that a newspaper article, originally published in the San
Jose Mercury News and republished in the Detroit Free Press,
regarding their son, a major league baseball pitcher, that
asserted that Virgil Howe had drinking problems was false and
defamatory. The court, Sharon Tevis Finch, J., granted the
defendants' motion for the release of a probation report pre-
pared in connection with a 1987 conviction of Virgil Howe for
operating a vehicle while impaired, ruling that by bringing the
lawsuit the plaintiffs had waived any privilege regarding state-
ments in the probation report, but denied the defendants'
request for supporting documentation referred to in the report.
The Court of Appeals, D. E. HOLBROOK, JR., P.J., and McDONALD
and JANSEN, JJ., in an opinion per curiam, reversed, ruling
that the probation report was not subject to discovery and
affirmed the decision to preclude release of the supporting
documentation (Docket Nos. 113908, 115524). The defendants
appeal.

In an opinion by Justice GRIFFIN, joined by Chief Justice
CAVANAGH, and Justices BRICKLEY, RILEY, and MALLETT, the
Supreme Court held:

The statutory privilege under MCL 791.229; MSA 28.2299,
precluding discovery of a probation report concerning Virgil
Howe prepared in connection with an unrelated criminal mat-
ter, was waived by the plaintiffs; thus, the report is a proper
subject of discovery by the defendants.

1. The provisions of MCL 791.229; MSA 28.2299, read as a
whole, establish an evidentiary privilege that precludes disclo-
sure of probation reports and records to the general public,

REFERENCES

Am Jur 2d, Depositions and Discovery §§ 31, 49; Libel and Slander
§§ 192 et seq.
See the Index to Annotations under Discovery; Libel and Slander;
Privileged and Confidential Matters.

even though access to such reports may be available to certain designated public authorities, and are logical in light of the underlying purpose of the statute. The reports are designed to facilitate sentencing under Michigan's indeterminate sentencing scheme. The probation officer is a nonadversarial adviser to the court whose function is to collect and evaluate information concerning the life and character of the subject and to make recommendations. Confidentiality allows the subject to make sensitive disclosures that may enhance the potential for rehabilitation without fear of public scrutiny or recrimination, and allows the officer to gather information from sources that otherwise might be unavailable. Disclosure to the public could seriously undermine the process. Because the defendants in this case do not fall within the category of persons allowed access by statute, an evidentiary privilege may be asserted by the plaintiffs.

2. A privilege may be waived implicitly by conduct that would make insistence on the privilege by the holder unfair. The statutory privilege at issue must yield where it conflicts with certain constitutional rights. In determining whether the privilege has been waived in a civil action, a court should begin its analysis with a presumption in favor of preserving the privilege. The burden of establishing a waiver must rest on the party seeking discovery. Fairness requires that the privilege end where it can be shown that the claim and the probable defenses to it are enmeshed in important evidence that will be unavailable if the privilege prevails. The burden on the defendant is proportional to the importance of the privilege. The court should carefully weigh the interests involved, balancing the importance of the privilege asserted against the defending party's need for the information to construct the most effective defense. If allowed, discovery should be narrowly limited to those portions of the privileged material that bear directly on the issues at hand.

3. In this case, while the plaintiffs are entitled to stand by their claim of statutory privilege, the privilege must yield. For the defendants' right under Const 1963, art 1, § 19, to present evidence of the truthfulness of their statements as a defense to defamation, to have meaning, the defendants must be afforded a reasonable opportunity to discover relevant evidence essential to that defense. It would be anomalous to permit the plaintiffs to significantly lighten their burden of proving that the statements in the article were false by using the privilege as a shield to preclude evidence of truth. In addition, the privilege must yield because its application in this case would bear little

or no relationship to its protective purpose. The benefit gained by waiver is far greater than that which would inure to the probation officer-probationer relationship. Because the plaintiffs waived the privilege, the probation report is a proper subject of discovery.

Reversed and remanded for further proceedings.

Justice BOYLE, concurring in part and dissenting in part, stated that because the trial court concluded that the entire probation report was relevant, and that finding is not contested, it must be released to the defendants.

MCL 791.229; MSA 28.2299 does not expressly create an evidentiary privilege. Rather, it should be construed to confer on a probationer a right to assert that a presentence report and supporting documentation are confidential with respect to disclosure. The statute does not create a right to suppress the information in court. Nor is the information a privileged communication under the common law. Where such information is sought, the remedy is to seek a protective order under MCR 2.302(C). The court then should inspect the material in camera, excise irrelevant information, and limit release of the material to those connected with the litigation.

Justice LEVIN, writing separately, stated that the authorities relied on by the majority involved attempts to shield evidence put directly in issue by the party making the attempt. In this case, the parties resisting discovery did not put the sought presentence report and supporting documentation in issue directly or indirectly. The precedents thus do not support the conclusion that the plaintiffs waived the statutory privilege.

184 Mich App 492; 459 NW2d 68 (1990) reversed.

LIBEL AND SLANDER — EVIDENCE — PROBATION REPORTS — PRIVILEGED INFORMATION — WAIVER.

In determining whether, in a civil action for defamation, a probation report prepared in connection with an unrelated criminal matter is privileged and immune from discovery, a court should begin its analysis with a presumption in favor of preserving the privilege; the burden of establishing a waiver rests on the party seeking discovery, and fairness requires that the privilege end where it can be shown that the claim and the probable defenses to it are enmeshed in important evidence that will be unavailable if the privilege prevails; the burden on the defendant is proportional to the importance of the privilege: the court should carefully weigh the interests involved, balancing the importance of the privilege against the defending party's need for the information to construct its most effective

defense; if allowed, discovery should be narrowly limited to those portions of the privileged material that bear directly on the issues at hand (MCL 791.229; MSA 28.2299).

*Lopatin, Miller, Freedman, Bluestone, Erlich, Rosen & Bartnick* (by *Richard E. Shaw*) for the plaintiffs.

*Honigman, Miller, Schwartz & Cohn* (by *Herschel P. Fink* and *Michael A. Gruskin*) for the defendants.

GRIFFIN, J. In this interlocutory appeal arising out of a civil suit for defamation, we must decide whether a probation report concerning one of the plaintiffs, prepared in connection with an unrelated criminal matter, is absolutely privileged under MCL 791.229; MSA 28.2299, and therefore immune from discovery. Although the statute provides a privilege, we conclude that, under the circumstances presented here, the privilege was waived with respect to portions of the report that are relevant to issues raised in the defamation suit filed by plaintiffs. Accordingly, we reverse the decision of the Court of Appeals.

I

This defamation action is based upon a newspaper article originally published in the San Jose (California) Mercury News on July 20, 1986, regarding major league baseball pitcher Steve Howe, son of plaintiffs Virgil and Barbara Howe. In the article, reporter Mike Antonucci wrote that "Howe [Steve Howe, plaintiffs' son was] the eldest of five children and four sons in a family that was a prisoner of his father's drinking problems." The article also quoted Steve Howe as stating that his mother was forced to feed her children powdered

milk "because his father [plaintiff Virgil Howe] was drinking up so many paychecks that the family was having enough trouble just coming up with a combined house and car payment of $84 a month." The newspaper article was republished in the Detroit Free Press.

Plaintiffs commenced this defamation suit, naming as defendants the Detroit Free Press, Inc., Knight-Ridder Newspaper Sales, Inc., the San Jose Mercury News, and reporter Mike Antonucci. In the lawsuit, plaintiffs asserted that the quoted excerpts were false and defamatory. Defendants answered that the statements in the article were true. During the course of discovery, defendants sought release of a probation report[1] prepared in connection with a 1987 conviction of Virgil Howe in the 52nd District Court, 3d Division, for operating a vehicle while impaired (OWI). MCL 257.625(2); MSA 9.2325(2). Defendants contended that the report contains information about Virgil Howe's alcohol habits, relevant to defendants' defense that Virgil Howe did in fact have "drinking problems." An attempt was made to obtain the report by issuing a subpoena to the chief Oakland County probation officer. However, on advice of counsel for the county, the officer refused to deliver the report in the absence of consent by Virgil Howe or a court order directing that it be released. Plaintiffs objected to release, citing MCL 791.229; MSA 28.2299, which provides in part that such records and reports "shall be privileged or confidential communications not open to public inspection."[2]

Thereafter, the trial court granted a motion by

---

[1] The document referred to as a "probation report" was prepared by a probation officer employed by Oakland County. Such a document is also referred to as a "presentence report." It includes background information concerning the accused, and is provided to assist the judge in sentencing. See MCL 771.14; MSA 28.1144.

[2] The full text of the statute is set forth below at p 209.

defendants for release of the report, ruling that
plaintiffs, by bringing the lawsuit, had "waived
any privilege with regard to statements in any
presentence or probation report and supporting
materials that [were] relevant to plaintiffs' defa-
mation claim . . . ." After reviewing the report in
camera, the trial court determined that the entire
report was relevant and should be delivered to
defendants; however, access to the report was
limited by the court to the parties to the lawsuit.[3]
At that point, plaintiffs sought an interlocutory
appeal in the Court of Appeals.

Meanwhile, defendants moved in the trial court
for discovery of certain supporting documentation
referred to in the probation report. Specifically,
defendants sought access to a portion of the proba-
tion file called "The ALCADD Test," which includes
an alcohol-use questionnaire and the results of a
test administered to Virgil Howe. When this re-
quest was denied by the trial court, defendants
also filed an application for leave to appeal. The
Court of Appeals granted both applications, consol-
idated the appeals, and stayed further proceedings
in the lower court.[4]

In an opinion per curiam, the Court of Appeals
reversed the trial court's ruling that the report is
discoverable, and affirmed its decision precluding
release of the supporting ALCADD test documenta-
tion.[5] 184 Mich App 492; 459 NW2d 68 (1990). We

[3] The trial court's order provided that when and if the case were
submitted to mediation pursuant to MCR 2.403, a copy of the proba-
tion report could be shown to the mediators but could not be attached
to or made a part of a mediation brief.

[4] Defendants also moved in the trial court for an order allowing
them to depose the probation officer who prepared the probation
report concerning Virgil Howe. The motion was scheduled for argu-
ment but never heard because of the stay of proceedings.

[5] On April 18, 1989, the Court of Appeals also denied defendants'
request to modify the stay to permit motions in the trial court
unrelated to the issue before the Court of Appeals. That order is not
germane to the issues raised in this appeal.

then granted leave to appeal. 437 Mich 1035 (1991).

II

This appeal turns on the meaning and applicability under these circumstances of MCL 791.229; MSA 28.2299, which provides:

All records and reports of investigations made by a probation officer, and all case histories of probationers shall be privileged or confidential communications not open to public inspection. Judges and probation officers shall have access to the records, reports, and case histories. The probation officer, the assistant director of probation, or the assistant director's representative, shall permit the attorney general, the auditor general, and law enforcement agencies to have access to the records, reports, and case histories. The relation of confidence between the probation officer and probationer or defendant under investigation shall remain inviolate.

It is plaintiffs' position that the probation report is absolutely privileged under the statute, and that the privilege was not waived by their initiation of the instant defamation suit. On the other hand, defendants contend that the statute does not create an evidentiary privilege; rather, it merely places restrictions upon disclosure of probation records and reports. If a privilege is created, defendants argue that it cannot be absolutely inviolate in light of language in the statute allowing for access to the report, not only by judges and probation officers, but also by certain designated state officials as well as "law enforcement agencies." Defendants find support in the writing of one commentator:

Because the latter authorities can be given access to the material by the probation officer in charge of a case or a superior official, without any requirement of defendant concurrence, it also seems difficult conceptually to structure this as a privilege. [George, A Practical Analysis of Michigan Evidence Law, § 15.30(J).]

Defendants further contend that, even if a statutory privilege were to be recognized, any such privilege was waived by plaintiffs when they commenced this lawsuit for defamation, particularly in light of the fact that denial of access to the report and its supporting materials would deprive defendants of relevant evidence essential to their defense. Defendants assert that the report and its supporting materials weigh heavily on the ultimate issue in this case—the falsity or truthfulness of statements in the newspaper article concerning Virgil Howe's "drinking problems."

A

Privileges have not been readily endorsed or broadly construed by the courts, for reasons explained by Professor McCormick in his treatise on Evidence (3d ed), ch 8, § 72, pp 170-171:

The overwhelming majority of all rules of evidence have as their ultimate justification some tendency to promote the objectives set forward by the conventional witness' oath, the presentation of "the truth, the whole truth, and nothing but the truth." Thus such prominent exclusionary rules as the hearsay rule, the opinion rule, the rule excluding bad character as evidence of crime, and the original documents (or "Best Evidence") rule, have as their common purpose the elucidation of the truth, a purpose which these rules seek to effect by operating to exclude evidence which is unreliable or which is calculated to prejudice or mislead.

By contrast, the rules of privilege . . . are not designed or intended to facilitate the fact-finding process or to safeguard its integrity. Their effect instead is clearly inhibitive; rather than facilitating the illumination of truth, they shut out the light.

Privileges do serve a purpose, however:

[R]ules of privilege are not without a rationale. Their warrant is the protection of interests and relationships which, rightly or wrongly, are regarded as of sufficient social importance to justify some sacrifice of availability of evidence relevant to the administration of justice. . . . [A] substantial number operate to protect communications made within the context of various professional relationships, e.g., attorney and client, physician and patient, clergyman and penitent. The rationale traditionally advanced for these privileges is that public policy requires the encouragement of the communications without which these relationships cannot be effective. [*Id.*, p 171.]

The existence and scope of a statutory privilege ultimately turns on the language and meaning of the statute itself. Cf. *People v Love*, 425 Mich 691, 705; 391 NW2d 738 (1986) (opinion of CAVANAGH, J.). As this Court has said:

The primary and fundamental rule of constitutional or statutory construction is that the Court's duty is to ascertain the purpose and intent as expressed in the constitutional or legislative provision in question. Also, while intent must be inferred from the language used, it is not the meaning of the particular words only in the abstract or their strictly grammatical construction alone that governs. The words are to be applied to the subject matter and to the general scope of the provision, and they are to be considered in light of the general purpose sought to be accomplished or the

evil sought to be remedied by the constitution or statute. [*White v Ann Arbor,* 406 Mich 554, 562; 281 NW2d 283 (1979). See also *People v Smith,* 423 Mich 427, 441; 378 NW2d 384 (1985) (opinion of WILLIAMS, C.J.).]

The first sentence of MCL 791.229; MSA 28.2299 states that probation reports and records "shall be *privileged* or *confidential* communications *not open to public inspection.*" (Emphasis added.) The next two sentences allow access to the probation reports and records by designated court personnel and law enforcement authorities. The final sentence of the statute provides that "[t]he relation of confidence between the probation officer and probationer or defendant under investigation shall remain inviolate."

We disagree with defendants' contention that the portion of the statute that permits access by court and law enforcement personnel somehow undermines plaintiffs' claim of privilege vis-à-vis the present defendants. We conclude that the statute's provisions, when read as a whole, do establish an evidentiary privilege that precludes disclosure to the general public, even though access to the report may be available to certain designated public authorities. The first sentence of the statute expressly elevates probation reports and records to the level of "privileged or confidential communications." The second and third sentences carve out specific exceptions to this rule. The final sentence, requiring that the relation of confidence between the probation officer and probationer shall remain "inviolate," when read in conjunction with the preceding provisions, makes clear that this mandate applies to the public, but not to certain court or law enforcement personnel. Cf. *People v Smith, supra* at 463-464 (opinion of BOYLE, J.); *People v*

*Hooper,* 157 Mich App 669, 674; 403 NW2d 605 (1987).

That the statute discriminates between the public and court officials is logical when considered in light of the underlying purpose of the statute. The report, which includes information gathered as the result of an investigation, is designed to facilitate the sentencing process pursuant to Michigan's indeterminate sentencing laws by individualizing each case. See MCL 771.14; MSA 28.1144. The probation officer is a nonadversarial adviser to the court whose function it is to collect and evaluate information concerning the life and character of the subject and to make recommendations. *Williams v New York,* 337 US 241, 250; 69 S Ct 1079; 93 L Ed 1337 (1949); MCL 771.14(2); MSA 28.1144(2). From the perspective of the subject, confidentiality allows that person to make sensitive disclosures that may enhance the potential for rehabilitation without fear of public scrutiny or recrimination. From the standpoint of the probation officer, privacy allows the officer to gather information from sources that might not otherwise be available. Since the information is gathered for the purpose of assisting the court in determining the sentence to be imposed, of course, access to the reports and records by court officials is a necessity. However, disclosure to the public could seriously undermine the process. Since the present defendants do not fall within the category of persons allowed access by the statute, we conclude that an evidentiary privilege may be asserted in the present case.

B

We turn now to consider the argument that plaintiffs have waived the privilege provided by

statute. Contending that the privilege is absolute, plaintiffs emphasize that the statute contains no "good cause" or other express provision for waiver. Compare MCL 600.2157; MSA 27A.2157 (physician-patient privilege); *In re Baby X,* 97 Mich App 111; 293 NW2d 736 (1980). Plaintiffs point out that the statute contains no provision that expressly allows the subject of the report to consent to a violation of the confidentiality mandate.

Nevertheless, there is authority for the proposition that a privilege can be waived through conduct that would make it unfair for the holder to insist on the privilege thereafter.[6] Dean Wigmore's discussion of waiver of the physician-patient privilege is instructive:

> A waiver is to be predicated not only when the conduct indicates a plain intention to abandon the privilege, but also when the conduct (though not evincing that intention) places the claimant in such a position, with reference to the evidence, that it would be unfair and inconsistent to permit

---

[6] At least for purposes of this case, we conclude that the holder of the privilege is the subject of the report. As already noted, the statute, grounded in public policy, is designed to encourage the subject to lay the facts fully before the probation officer and show any mitigating circumstances before sentencing. In turn, the probation officer can act effectively only if he is advised of all the circumstances before making a recommendation. The process succeeds only if there is a guarantee of confidentiality to the subject and would fail if the probation officer could unilaterally and arbitrarily waive the requirement of confidence. Consequently, while either party to the communication may raise the privilege, the power to waive it lies with the subject alone, or the probation officer acting with the consent of the subject.

Our conclusion in this regard means that to the extent that the plaintiff wife in the instant case may have made statements in connection with the presentence report, she is not privileged to refuse to disclose them since she is not the subject of the report.

The decision in this case is not intended to address that facet of the statute which may establish a confidential relationship between the probation officer and informants. See, e.g., MCR 6.425; MCL 771.14(3); MSA 28.1144(3). The instant case does not involve the protection of third-party confidential sources.

the retention of the privilege. It is not to be both a sword and a shield (in Lord Mansfield's phrase concerning an infant's exemption from liability). [8 Wigmore, Evidence (McNaughton rev), § 2388(3), p 855.]

In several cases, our Court of Appeals has ruled that the statutory privilege here at issue must yield where it conflicts with certain constitutional rights. As an example, in *People v Rohn,* 98 Mich App 593; 296 NW2d 315 (1980), the defendant was convicted of aiding and abetting in the commission of first-degree murder and conspiring to commit first-degree murder. For impeachment purposes, the defendant had requested, but was denied, access to presentence reports of three prosecution witnesses who were accomplices to the murder. The Court of Appeals reversed and held that the reports should have been made available, relying on *Davis v Alaska,* 415 US 308; 94 S Ct 1105; 39 L Ed 2d 347 (1974). In *Davis,* the United States Supreme Court held that the Sixth Amendment right of confrontation entitled a defendant to certain confidential information for impeachment purposes, even though such use conflicted with Alaska's asserted interest in preserving the confidentiality of juvenile delinquency adjudications. The *Rohn* Court stated:

Although the defendants' interests differ, the *Davis* defendant sought to impeach to show a witness's bias while Rohn wants to impeach to attack the credibility of incriminating information, we agree that the latter impeachment is as equally necessary as the former. It is critically important that any finding of guilt or any sentence be predicated on accurate information. See *People v Malkowski,* 385 Mich 244, 249; 188 NW2d 559 (1971). Thus, we must conclude that the need for impeachment of criminal accusations outweighs any

need for confidentiality of presentence reports.
This does not mean that defendants should receive
wholesale access to the confidential records of
others. We hold only that when records of prior
inconsistent statements of witnesses are necessary
for effective cross-examination, they should be
made available to the defendant. An in camera
inspection procedure should be utilized by the
court to limit disclosure to those statements ma-
terially inconsistent with the witness's testimony.
[*Rohn, supra,* p 600.][7]

In contrast to the implied waiver found in *Rohn,
supra,* our Court of Appeals, in two other cases,
has examined MCL 791.229; MSA 28.2299 in the
context of civil proceedings and has found the
statutory privilege at issue here to be absolute and
unyielding.

In *Havens v Roberts,* 139 Mich App 64, 68; 360
NW2d 183 (1984), an insurance company sought
disclosure of information contained in an accom-
plice's probation report in order to avoid liability
for the actions of its insured who had committed a
crime. The Court of Appeals held that the proba-
tion officer's files were not discoverable:

> We note that on appeal Nationwide continues to
> argue that it should be given the opportunity to
> review the probation officer's files. This report is
> absolutely privileged and cannot be a subject of
> discovery. As stated in the statute, this confidence
> "shall remain inviolate." MCL 791.229; MSA
> 28.2299.

---

[7] See also *People v Hooper,* 157 Mich App 669; 403 NW2d 605
(1987); cf. *People v Lawrence Johnson,* 111 Mich App 383; 314 NW2d
631 (1981) (the statutory physician-patient privilege yielded in a
prosecution for altering a prescription); cf. *People v Davis,* 91 Mich
App 434, 442; 283 NW2d 768 (1979) (in a trial charging criminal
sexual conduct, the court disallowed discovery of the complainant's
medical records regarding treatment for alcoholism, purportedly bear-
ing on the defense of consent, on the ground that a generalized claim
of privilege must give way only to a " 'demonstrated specific need for
evidence' " in a pending criminal trial).

In *Peters v Bay Fresh Start, Inc,* 161 Mich App 491; 411 NW2d 463 (1987), two felons left a half-way house and burglarized the residence of a Dr. Jones, seriously injuring him. In a civil suit for negligence brought against the halfway house and a probation officer, the plaintiff, conservator of the estate of Dr. Jones, sought discovery of the felons' presentence reports to prove that the probation officer knew of the felons' prior history of violent behavior. The trial court entered an order allowing discovery of portions of the reports. However, the Court of Appeals reversed and ruled that the reports were absolutely privileged:

> [T]he language of the statute is absolute. We agree with *Rohn, supra,* that there are some constitutional rights which may supersede the privilege, but the interests asserted by plaintiff here hardly compare with the right to confrontation in criminal cases. It is, of course, possible that the Legislature intended only to protect probationers and informants, so that the privilege would not apply when neither a probationer nor an informant, but only a probation officer, requested nondisclosure. The language of the statute itself contains no such proviso, however. We reverse the trial court . . . insofar as it held that any of the probation officer's records or reports were discoverable. [*Peters, supra,* pp 497-498.]

In the instant case, the Court of Appeals expressly followed the decisions in *Peters* and *Havens,* ruling "that the privilege is absolute and that the trial court erred in allowing defendants to discover the probation reports." 184 Mich App 495. We note, however, that *Havens* and *Peters* are not factually analogous to the present case. Here, the party asserting the statutory privilege is one of the plaintiffs in this civil suit. By commencing this defamation action, Virgil Howe has put the con-

tents of the probation report at issue. Defendants maintain that information contained in the report is not only relevant, but essential to their defense. Hence, unlike *Havens* and *Peters,* we must decide in this case whether this statutory privilege can be used by a plaintiff in a civil suit as both the metaphorical sword and shield. Under these circumstances, we look to a number of federal court decisions that are more instructive.

### III

The federal courts have utilized three approaches in ruling on testimonial or evidentiary privileges asserted by plaintiffs in civil litigation. The "automatic waiver" rule requires that a plaintiff seeking relief waive whatever privilege he possesses. A second theory finds that a privilege will be waived if (1) assertion of the privilege was a result of some affirmative act, such as filing suit, by the asserting party; (2) through this affirmative act, the asserting party put the protected information at issue by making it relevant to the case; and (3) application of the privilege would have denied the opposing party access to information vital to his defense. The third theory balances the need for discovery against the need for protecting secrecy.

The "automatic" waiver rule was first espoused in *Independent Productions Corp v Loew's, Inc,* 22 FRD 266 (SD NY, 1958). In *Loew's,* the plaintiffs, movie producers and distributors, filed a private antitrust suit against the defendants, alleging conspiracy to restrain the distribution of a certain film. The defendants deposed the president and sole stockholder of one of the plaintiffs, inquiring into his alleged association with subversive organizations and his refusal to testify before a congressional committee. During the deposition, he in-

voked the First and Fifth Amendment privileges in refusing to answer questions concerning these matters. The court found the questions to be relevant for purposes of pretrial discovery and ruled that the stockholder had waived his constitutional privileges by having his company commence the civil suit. The court explained:

> Plaintiffs in this civil action have initiated the action and forced defendants into court. If plaintiffs had not brought the action, they would not have been called on to testify. Even now, plaintiffs need not testify if they discontinue the action. They have freedom and reasonable choice of action. They cannot use this asserted privilege as both a sword and a shield. Defendants ought not be denied a possible defense because plaintiffs seek to invoke an alleged privilege. [*Id.*, p 277.][8]

A second approach was utilized in *Hearn v Rhay,* 68 FRD 574 (ED Wash, 1975), where the court rejected the "automatic waiver" rule and applied instead a three-part test to determine whether a privilege had been impliedly waived. In *Hearn,* an inmate in a state penitentiary instituted a civil rights action against prison officials after he was confined in a mental health unit of the prison without a hearing or other review. The prison officials raised the affirmative defense of qualified immunity on the basis of good faith,

---

[8] The *Loew's* court quoted with approval the following passage from Moore, Federal Rules & Official Forms, 164 (1956):

> "[A]ssume that plaintiff sues on the alleged slanderous statement that defendant had called him a Communist; the defendant pleads truth as an affirmative defense; and on the taking of plaintiff's deposition plaintiff pleads his privilege against incrimination to a properly framed and relevant question as to plaintiff being a Communist. Does not fairness demand that defendant's affirmative defense be taken as true for the purpose of the action?" [*Loew's, supra,* p 276.]

claiming that they acted on legal advice received in confidence from the state's attorney general. However, when the plaintiff sought to discover information related to that affirmative defense, the defendants asserted the attorney-client privilege. The court held that where three conditions exist, a court should find that the party asserting a privilege has impliedly waived it through his own affirmative conduct:

> (1) [A]ssertion of the privilege was a result of some affirmative act, such as filing suit, by the asserting party;
> (2) [T]hrough this affirmative act, the asserting party put the protected information at issue by making it relevant to the case; and
> (3) [A]pplication of the privilege would have denied the opposing party access to information vital to his defense. [*Id.*, p 581.]

Applying these elements to the facts, the *Hearn* court stated:

> [D]efendants assert the privilege in aid of the affirmative defense that they are protected from liability by a qualified immunity. Therefore, all the elements common to a finding of waiver are present in this case: defendants invoked the privilege in furtherance of an affirmative defense they asserted for their own benefit; through this affirmative act they placed the protected information at issue, for the legal advice they received is germane to the qualified immunity defense they raised; and one result of asserting the privilege has been to deprive plaintiff of information necessary to "defend" against defendants' affirmative defense, for the protected information is also germane to plaintiff's burden of proving malice or unreasonable disregard of his clearly established constitutional rights. Since all the elements of an implied waiver exist, defendants must be found to

have waived their right to assert the attorney-client privilege by virtue of having raised the affirmative defense of immunity. [*Id.* See also *Afro-Lecon, Inc v United States,* 820 F2d 1198 (CA Fed, 1987); *Zenith Radio Corp v United States,* 764 F2d 1577 (CA Fed, 1985).]

The third approach used to determine whether a civil plaintiff has waived a privilege is enunciated in *Greater Newburyport Clamshell Alliance v Public Service Co of New Hampshire,* 838 F2d 13 (CA 1, 1988). There, the court applied a variation of the balancing test utilized in *Hearn, supra,* to decide whether the plaintiffs, by instituting a civil rights action, had waived their attorney-client privilege with regard to relevant confidential information. The plaintiffs' lawsuit alleged violation of their Sixth Amendment right to counsel when the defendant public utility used undercover informants to infiltrate attorney-client meetings. After the defendant subpoenaed records of the meetings, the plaintiffs moved to quash the subpoena on the ground of attorney-client privilege. The trial court held that the plaintiffs had waived the privilege by filing suit and held the plaintiffs in contempt for not producing the notes. The plaintiffs appealed the contempt citation. Finding the situation to be "quasi-constitutional" (the conversations occurred when the attorney was preparing a defense to a criminal case), the United States Court of Appeals for the First Circuit weighed the competing interests of the parties:

> [T]he automatic waiver rule, in what may be termed a "quasi-constitutional" situation, is too harsh. Without any consideration of the relative interests involved, it simply destroys a privilege even if the privilege would not shield evidence of any significance to the defense. Instead, a court

should begin its analysis with a presumption in favor of preserving the privilege. In a civil damages action, however, fairness requires that the privilege holder surrender the privilege to the extent that it will weaken, in a meaningful way, the defendant's ability to defend. That is, the privilege ends at the point where the defendant can show that the plaintiff's civil claim, and the probable defenses thereto, are enmeshed in important evidence that will be unavailable to the defendant if the privilege prevails. The burden on the defendant is proportional to the importance of the privilege. The court should develop the parameters of its discovery order by carefully weighing the interests involved, balancing the importance of the privilege asserted against the defending party's need for the information to construct its most effective defense. [*Id.,* p 20.]

The First Circuit directed the district court to dismiss the contempt charges and to allow further discovery. In order to assist the district court regarding future requests for discovery of privileged matter, the First Circuit offered the following guidelines:

First, defendants should demonstrate that the material to be discovered is relevant to their case. This showing should include an articulation of how the material could assist the preparation of their defense in a meaningful way. A showing comparable to that presented regarding the contents of discussion to which Nims was privy would be sufficient. Secondly, defendants should demonstrate why it would be unreasonably difficult for them to obtain the information elsewhere or that redundant evidence will be helpful to their case. They do not have to prove that it is absolutely unavailable from other sources. Of course, the more the requested discovery would intrude into the privilege, the greater should be the showing of need and lack of reasonable alternative sources. [*Id.,* p 22.]

Other federal courts have likewise employed a balancing analysis to determine whether a civil plaintiff may invoke either constitutional or non-constitutional privileges to limit the scope of discovery. See, e.g., *Sedco Int'l, SA v Cory,* 683 F2d 1201 (CA 8, 1982) (attorney-client privilege), *Black Panther Party v Smith,* 213 US App DC 67; 661 F2d 1243 (1981), judgment vacated without opinion sub nom *Moore v Black Panther Party,* 458 US 1118 (1982) (First and Fifth Amendment privileges), and *Wehling v Columbia Broadcasting System,* 608 F2d 1084 (CA 5, 1979) (Fifth Amendment privilege against self-incrimination).

IV

Without suggesting that every waiver of privilege claim should be treated in the same manner, we conclude that under these particular circumstances, the *Clamshell* decision provides the most appropriate basis for resolving the claim now before us. We select the *Clamshell* mode of analysis because it avoids the rigidity of the automatic waiver rule and provides enhanced flexibility beyond the three factors to be considered under *Hearn, supra.*

In applying the balancing test, we counsel that a court "should begin its analysis with a presumption in favor of preserving the privilege." *Clamshell, supra,* p 20. Accordingly, the burden of establishing a waiver under the balancing approach rests on the party seeking discovery. *Id.,* p 19; *Zenith, supra,* p 1580. Further, we emphasize that discovery, if allowed, should be narrowly limited to those portions of the privileged material that bear directly on the issues at hand. As the Court in *Rohn, supra,* p 600, aptly cautioned, the need to pierce the veil of confidentiality "does not

mean that defendants should receive wholesale access to the confidential records of others."

In balancing the competing interests of the parties in this case, we begin by noting that the Michigan Court Rules provide for broad discovery in civil cases. MCR 2.302(B)(1). See also *Domako v Rowe,* 438 Mich 347; 475 NW2d 30 (1991). Indeed, it has been argued that the invocation of sanctions would be appropriate here, if plaintiffs resist discovery. See MCR 2.313(B)(2)(a).[9] A similar argument apparently influenced the *Loew's* court, which applied the "automatic waiver" rule and cited with approval an excerpt from Moore's Federal Practice that mirrors the sanctions authorized by MCR 2.313(B)(2)(a). See *ante,* p 219, n 8.

However, we reject the "automatic waiver" rule urged upon us by defendants because it is inflexible and appears to minimize the plaintiff's interest. MCR 2.302(B)(1) limits discovery to "any matter, *not privileged.*" (Emphasis added.) In the instant case, plaintiffs are entitled to stand by their claim of statutory privilege and have their interests carefully weighed against those of the defendants without the threat of automatic waiver or sanctions.

Plaintiffs seek to collect damages from defendants because of their published statement that Virgil Howe had a problem with alcohol. The trial judge conducted an in camera inspection of the

---

[9] MCR 2.313(B)(2)(a) provides:

If a party . . . fails to obey an order to provide or permit discovery . . . the court in which the action is pending may order such sanctions as are just, including, but not limited to the following:

(a) an order that the matters regarding which the order was entered or other designated facts may be taken to be established for the purposes of the action in accordance with the claim of the party obtaining the order . . . .

probation records from Virgil Howe's 1987 impaired driving conviction to determine the relevancy of the materials contained in the report. She ultimately concluded that the whole report was relevant. We agree that "the plaintiff's civil claim, and the probable defenses thereto, are enmeshed in important evidence that will be unavailable to the defendant if the privilege prevails." *Clamshell, supra,* p 20. Certainly a conviction for driving while intoxicated and the events surrounding it, as capsulized in the probation report, are significant points of evidence which bear directly on the defense of truth.

The special standing of truth as a defense in a defamation action must be underscored. In that regard, we note that the Court of Appeals erred when it stated that "[t]he present case does not involve constitutional rights which may supersede the privilege." 184 Mich App 495. A constitutional right is implicated here. Art 1, § 19 of the Michigan Constitution provides:

> In all prosecutions for libels the truth may be given in evidence to the jury; and, if it appears to the jury that the matter charged as libelous is true and was published with good motives and for justifiable ends, the accused shall be acquitted.

If this constitutional right is to have meaning, surely it is necessary to afford libel defendants a reasonable opportunity to discover relevant evidence that is essential to their defense of truth. In the context of the instant case, such considerations are especially important in light of the fact that a private-figure plaintiff is not required to prove malice in a libel suit against a media defendant. Instead, it is enough to show that the challenged statement was false and that the media defendant

was negligent in reporting it. *Rouch v Enquirer & News of Battle Creek,* 427 Mich 157, 206; 398 NW2d 245 (1986). In these circumstances, it would be anomalous, indeed, if a plaintiff could significantly lighten the burden of proving falsity by using the statutory privilege as a shield to preclude evidence of truth.

Although the fact of Howe's 1987 conviction of impaired driving, standing alone, offers some justification for the statements set forth in the newspaper article, the defendants in this lawsuit have no guarantee of success in the defamation suit. Their ability to defend by proving that Virgil Howe had "drinking problems" is seriously undermined by plaintiffs' assertion of privilege.

Our conclusion that the privilege should yield is bolstered by the further belief that assertion of the privilege in this case bears little or no relationship to its protective purpose. As earlier noted, *ante,* p 210, privileges are exceptional and subject to narrow definition. *United States v Nixon,* 418 US 683, 710; 94 S Ct 3090; 41 L Ed 2d 1039 (1974); *People v Love, supra* at 700-701, 712; *People v Dixon,* 161 Mich App 388; 411 NW2d 760 (1987); 8 Wigmore, *supra,* § 2291, p 554 (a privilege "ought to be strictly confined within the narrowest possible limits consistent with the logic of its principle"). At common law, one of the essential conditions for the establishment of a privilege was that "[t]he injury that would inure to the relation by the disclosure of the communications must be greater than the benefit thereby gained for the correct disposal of litigation." *Id.,* § 2285, p 527 (emphasis deleted).

The privilege established by MCL 791.229; MSA 28.2299 is designed to encourage unfettered communication between the probation officer and the accused in the presentencing phase of a criminal

case. There is no rational reason to believe that the Legislature intended that the statute be used in the present manner—as an offensive weapon to block access to information relevant and vital to the just determination of issues in an unrelated civil case. The benefit gained by waiving the privilege is far greater than the injury that will inure to the probation officer-probationer relationship.

V

We therefore conclude that plaintiffs have waived the statutory privilege accorded by MCL 791.229; MSA 28.2299, and that the probation report is a proper subject of discovery by defendants. Accordingly, the decision of the Court of Appeals is reversed.

In keeping with our holding that discovery allowed under these circumstances should be narrowly confined, we remand to the trial court and direct that the probation report be reëxamined in camera and that portions of the report, if any, which do not bear directly on the issues at hand, be excised.

With regard to that part of the probation file referred to as the ALCADD test, an alcohol use questionnaire, we do not possess adequate information to allow for a review concerning its relevancy. Consequently, on remand the trial court is directed to examine and determine the discoverability of the ALCADD test in accordance with the principles set forth in this opinion.

Reversed and remanded.

CAVANAGH, C.J., and BRICKLEY, RILEY, and MALLETT, JJ., concurred with GRIFFIN, J.

BOYLE, J. (*concurring in part and dissenting in*

*part*). Because the trial court concluded the entire report was relevant and that finding is not contested here, I would hold that the probation report must be released to the defendants. MCL 791.229; MSA 28.2299, does not create an evidentiary privilege, but, rather, confers on a probationer a right to assert that the presentence report and supporting documentation are confidential as against disclosure. Assuming arguendo that the statute creates an evidentiary "privilege," I agree the privilege was waived.

I

The judiciary's concern for the fact-finding process dictates a conservative approach to recognizing obstacles to truth finding unless required by policy concerns of great significance.[1] Thus, where statutes purport to make secret certain disclosures, courts traditionally construe the cloak of secrecy as narrowly as possible consistent with the obligation to uphold the legislative purpose, while guarding against the loss of relevant evidence. Where the Legislature has not clearly acted to create an evidentiary bar, the statute should be construed to create confidentiality in the records, rather than

---

[1] *United States v Nixon,* 418 US 683, 710; 94 S Ct 3090; 41 L Ed 2d 1039 (1974) ("[T]hese exceptions to the demand for every man's evidence are not lightly created nor expansively construed, for they are in derogation of the search for truth").

Because of the key role of the testimony of witnesses in the judicial process, courts have historically been cautious about privileges. . . . "Limitations are properly placed upon the operation of this general principle only to the very limited extent that permitting a refusal to testify or excluding relevant evidence has a public good transcending the normally predominant principle of utilizing all rational means for ascertaining truth." [*Id.* at 710, n 18, quoting *Elkins v United States,* 364 US 206, 234; 80 S Ct 1437; 4 L Ed 2d 1669 (1960) (Frankfurter, J., dissenting).]

an absolute testimonial privilege. Where a statute provides that the records are confidential, a person seeking to prevent their release may seek a protective order under MCR 2.302(C).[2]

## A

Neither legal literature nor evidentiary codes provide a comprehensive definition of privilege. See 23 Wright & Graham, Federal Practice & Procedure, § 5422, p 667. However, Wright and Graham offer the following definition: "[A privilege is] a rule that gives a person a right to refuse to disclose information to a tribunal that would otherwise be entitled to demand and make use of that information in performing its assigned function." *Id.*

Questions concerning the extent of the cloak of secrecy created by statute involve what uses of what information may be suppressed at whose request. Privilege is "concerned with disclosure [of information] in court." *Id.,* § 5437, p 892, n 15. Confidentiality is concerned with "extrajudicial disclosures." *Id.* "Courts are not always careful to distinguish between privilege (the right to refuse to disclose information in response to judicial inquiry) and confidentiality (the right to prevent others from making extrajudicial disclosures)." *Id.,* § 5423, 1992 Pocket Part, p 206, n 11, citing *Nixon v Freeman,* 216 US App DC 188, 197; 670 F2d 346 (1982). Plaintiff contends that the statute creates a

---

[2] MCR 2.302(C) provides in relevant part:

Protective Orders. On motion by a party or by the person from whom discovery is sought, and on reasonable notice and for good cause shown, the court in which the action is pending may issue any order that justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense . . . .

right to suppress the disclosure of information in court, i.e., that it creates an evidentiary privilege. I disagree.

The consequence of characterizing a statute as one creating an evidentiary privilege, rather than one creating confidentiality, is the potential loss of relevant evidence. If the statute is characterized as creating a privilege, a "court cannot compel disclosure of matters falling within the statute when adjudicating preliminary questions of fact." Wright & Graham, *supra,* § 5437, p 891. Moreover, the privilege applies at every stage of adjudication —the information it protects cannot be discovered, nor can a grand jury compel its disclosure. *Id.* at 891-892.

MCL 791.229; MSA 28.2299 provides:

> All *records and reports of investigations* made by a probation officer, and all *case histories* of probationers shall be *privileged or confidential* communications *not open to public inspection.* Judges and probation officers shall have access to the records, reports, and case histories. The probation officer, the assistant director of probation, or the assistant director's representative, shall permit the attorney general, the auditor general, and law enforcement agencies to have access to the records, reports, and case histories. *The relation of confidence between the probation officer and probationer* or defendant under investigation *shall remain inviolate.* [Emphasis added.]

In one sentence the statute refers to records as "privileged *or* confidential" (emphasis added), while in the last sentence it refers to the "relation of confidence" that "shall remain inviolate." Moreover, the statute expressly states that these records "shall . . . not [be] open to public inspection," yet it provides for access by law enforcement agencies and other officials. The statute does not

address compelled disclosure in collateral litigation, and thus does not unambiguously create an evidentiary privilege. Because it is subject to more than one construction, the statute should be construed to create a rule of confidentiality.[3]

### B

Analysis of the purpose of evidentiary privileges leads to the same result. At common law, the rules of privilege were developed as a protection against the court's power to compel testimony.

> For more than three centuries it has now been recognized as a fundamental maxim that the public . . . has a right to every man's evidence. When we come to examine the various claims of exemption, we start with the primary assumption that there is a general duty to give what testimony one is capable of giving and that any exemptions which may exist are distinctly exceptional, being so many derogations from a positive general rule . . . . [8 Wigmore, Evidence (McNaughton rev), § 2192, p 70.]

The United States Supreme Court is generally reluctant to recognize new rules of privilege. "We do not create and apply an evidentiary privilege unless it 'promotes sufficiently important interests to outweigh the need for probative evidence . . . .' " *Univ of Pennsylvania v EEOC,* 493 US 182, 189; 110 S Ct 577; 107 L Ed 2d 571 (1990), quoting *Trammel v United States,* 445 US 40, 51; 100 S Ct 906; 63 L Ed 2d 186 (1980). Moreover, because the application of a rule of privilege " 'contravene[s] the fundamental principle that "the public . . . has a right to every man's evidence," ' " . . . any such privilege must be

---

[3] The government has not asserted a privilege.

'strictly construed.' " *Id.,* quoting *Trammel,* 445 US 50, quoting *United States v Bryan,* 339 US 323, 331; 70 S Ct 724; 94 L Ed 884 (1950).

Wigmore sets forth four criteria necessary to establish a privileged communication that incorporate the concept that a refusal to disclose information must be justified by the need to uphold a competing social good. Wright & Graham, *supra,* § 5422, p 671. For communications to be privileged:

> (1) The communications must originate in a *confidence* that they will not be disclosed.
>
> (2) This element of *confidentiality must be essential* to the full and satisfactory maintenance of the relation between the parties.
>
> (3) The *relation* must be one which in the opinion of the community ought to be sedulously *fostered.*
>
> (4) The *injury* that would inure to the relation by the disclosure of the communications must be *greater than the benefit* thereby gained for the correct disposal of litigation. [8 Wigmore, Evidence (McNaughton rev), § 2285, p 527. Emphasis in original.]

The reports claimed as privileged under MCL 791.229; MSA 28.2299 satisfy none of these criteria. They were not created in confidence that they would not be disclosed. In fact, quite the opposite is true. At the time a presentence report is generated, the defendant under investigation knows that it will be forwarded to the prosecutor and the court.

Furthermore, while confidentiality is desirable vis-à-vis extrajudicial disclosure of the report, an evidentiary privilege is neither contemplated by the words of the statute nor essential to the full and satisfactory relation between the defendant under investigation and the probation officer.

Again, the opposite is true. The defendant under investigation has every reason to present himself to the probation officer in the best light possible so that a favorable impression is transmitted to the court and to other officers of the court. To paraphrase McCormick's criticism of the marital privilege, the danger of suppression of relevant proof is clear and certain. The probable benefits of the rule of privilege (in encouraging the relationship) is at best doubtful and marginal.

Moreover, the relationship between the probation officer and defendant is not one that the community as a community has an interest in fostering. The relationship is an artificially created one, ordered by the court for the court's purposes. This observation does not denigrate the importance of the relationship, but, rather, distinguishes it from other relationships such as those represented in the common-law privileges, which are assumed to protect relationships more broadly reflective of society's interests.[4]

Finally, the benefits gained for the correct disposal of litigation, i.e., reliable fact finding, are certainly greater than any harm to the probation officer/defendant relationship as a result of disclosure of the information. Stated otherwise, because the defendant under investigation already has a motive to present himself favorably to a probation officer, suppression of information, in collateral litigation not contemplated at the time of the investigation, is too remote a consequence to justify suppression in judicial proceedings.

C

Where a statutory privilege is claimed, the

[4] Compare *People v Love,* 425 Mich 691; 391 NW2d 738 (1986) (spousal privilege) with *People v McFarlin,* 389 Mich 557; 208 NW2d 504 (1973) (restriction on the use of the juvenile record).

court's analysis focuses on the language of the statute, the purpose to be obtained, and the effect on the truth-finding process. *People v Hamacher,* 432 Mich 157; 438 NW2d 43 (1989). Where the Legislature intends to exclude testimony about a topic, it frequently expressly so states. For instance, under MCL 333.18237; MSA 14.15(18237), a psychologist "shall not be compelled to disclose confidential information . . . ." Nor can a psychiatrist be compelled to disclose privileged communications. "Privileged communications shall not be disclosed in civil, criminal, legislative, or administrative cases or proceedings, or in proceedings preliminary to such cases or proceedings, unless the patient has waived the privilege, except in the circumstances set forth in this section." MCL 330.1750(2); MSA 14.800(750)(2). Likewise, MCL 330.2028(3); MSA 14.800(1028)(3) states that an opinion concerning competency to stand trial "may not be admitted as evidence for any purpose in the pending criminal proceedings," and husbands and wives "shall not be examined" for or against each other without the consent of the other. MCL 600.2162; MSA 27A.2162; *People v Love,* 425 Mich 691; 391 NW2d 738 (1986).

However, where the Legislature decreed:

The commissioner of the banking department, his deputy or deputies, every clerk in his employment, and examiner shall be bound by oath to keep secret all facts and information obtained in the course of such examination, except in as far as the public duty of such officer requires him to report upon or take official action, regarding the affairs of such bank [1929 CL 11940],[5]

[5] MCL 487.329; MSA 23.710(29), the statute's current version, incorporated this Court's holding in *In re Culhane Estate,* 269 Mich 68; 256 NW 807 (1934). It currently provides that all facts and information are secret, but an employee may "testify in any proceedings regarding the affairs of any institution."

this Court held that the Legislature did not intend to preclude testimony by bank examiners "in the courts of the State under oath and upon due process." *In re Culhane Estate,* 269 Mich 68, 80; 256 NW 807 (1934).

Since the Legislature did not expressly create a rule of privilege when it enacted MCL 721.229; MSA 28.2299, we should decline to do so.

## II

The purpose of the Legislature may be served by construing the statute to create confidentiality in the probation records. Thus, a defendant does not have an unqualified right to prevent disclosure of his communications or of the probation records in subsequent actions. The statute requires the probation department to keep this information confidential, and to keep the information from the general public. In the event, as here, that a party seeks discovery of the information in subsequent litigation, the defendant's remedy is to seek a protective order. The court should then inspect the material in camera, excise irrelevant information, and order the parties not to release the information to others not connected to the litigation.[6]

LEVIN, J. (*separate opinion*). The majority rejects the "automatic" waiver rule[1] and opts for a "varia-

---

[6] In *Pennsylvania v Ritchie,* 480 US 39; 107 S Ct 989; 94 L Ed 2d 40 (1987), the Court relied on the fact that the Legislature contemplated some use of confidential records in judicial proceedings in concluding that although due process did not require pretrial discovery of the record, it did require the trial court to review the record upon a plausible showing that it contained matter both material and favorable to the defense.

[1] See *Independent Productions Corp v Loew's, Inc,* 22 FRD 266 (SD NY, 1958).

tion of the balancing test utilized in"[2] *Hearn v Rhay*, 68 FRD 574 (ED Wash, 1975). The variation "is enunciated in *Greater Newburyport Clamshell Alliance v Public Service Co of New Hampshire*, 838 F2d 13 (CA 1, 1988)."

In *Hearn* and *Clamshell*, the party resisting discovery put directly in issue the evidence sought to be shielded by the asserted privilege. In the instant case, the Howes, the parties resisting discovery, did not put directly or indirectly in issue the presentence report or supporting documentation.

In *Hearn*, an inmate in a state penitentiary commenced a civil rights action against prison officials. The prison officials raised qualified immunity as an affirmative defense, claiming that they had acted on legal advice received from the state's attorney general. When the inmate sought to discover information relating to the affirmative defense, the prison officials asserted the attorney-client privilege.

To have allowed the privilege to be invoked by the prison officials would have been akin to permitting a defendant in a criminal case, who claims on appeal to have been ineffectively assisted by counsel at the trial, to assert the attorney-client privilege to prevent his trial attorney from testifying at a posttrial hearing held to assess the alleged ineffectiveness of counsel. It is well established that a defendant in a criminal case who asserts ineffective assistance of counsel waives by doing so the attorney-client privilege. Courts readily reach that conclusion without invoking the doctrines adverted to by the majority.

In *Clamshell*, the plaintiffs commenced a civil rights action claiming that the defendant public

[2] *Ante*, p 221.

utility employed undercover informants to infiltrate attorney-client meetings. When the public utility sought to subpoena records of the meetings, plaintiffs asserted the attorney-client privilege. Although the plaintiffs claimed that their Sixth Amendment right had been violated by the intrusion on attorney-client meetings, they sought to shield from discovery a record of what occurred when their Sixth Amendment right was assertedly violated.

The Detroit Free Press ran a news article concerning Virgil M. Howe without awareness of the presentence report, and thus without reliance on the presentence report. Any relationship between the contents of the presentence report and the alleged defamatory material is adventitious, while what occurred at the attorney-client meetings in *Clamshell* and the advice of the attorney general in *Hearn* was the focus of the claim in *Clamshell* and the defense in *Hearn.*

The precedents relied on by the majority do not support the conclusion that the Howes waived the statutory privilege.

The Detroit Free Press relied on information other than the presentence report in running the news article. The reliability of that information and other nonprivileged evidence provide a defense. There is no need here to develop a new legal analysis to protect the freedom of the press or to support and defend the First Amendment.