*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellant,

V

GR,

        Defendant-Appellee.

FOR PUBLICATION
January 21, 2020
9:00 a.m.

No. 346418
Lapeer Circuit Court
LC No. 17-012875-FC

---

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellant,

V

AC,

        Defendant-Appellee.

No. 346596
Lapeer Circuit Court
LC No. 17-012877-FC

---

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellant,

V

DD,

        Defendant-Appellee.

No. 347023
Lapeer Circuit Court
LC No. 17-012876-FC

---

Before: K. F. KELLY, P.J., and BORRELLO and SERVITTO, JJ.

BORRELLO, J.

In these consolidated appeals, the State appeals by leave granted in Docket Nos. 346418 and 346596, and by delayed leave granted in Docket No. 347023, the trial court's orders granting defendants' respective motions to close the proceedings to the public in each case. On appeal, the State argues that the trial court erred when it closed the proceedings to the public because the relevant proceedings were either not actually proceedings conducted under the Holmes Youthful Trainee Act (HYTA), MCL 762.11 *et seq.*, or the proceedings were not regarding the disposition of the defendants' criminal charges. Alternatively, the State argues that if the proceedings could be closed to the public under MCL 762.14(4), then that statute is unconstitutional as applied in each case. For the reasons set forth in this opinion, we affirm.

## I. BACKGROUND

Defendants were charged with various offenses stemming from allegations that they were planning to commit a school shooting. Each defendant entered into plea agreement offered by the State and accepted by the trial court. The trial court sentenced each defendant under HYTA to five years' probation.

Subsequently, pursuant to defendants' motions in the context of their respective probation review hearings, the trial court ruled that the proceedings would be closed pursuant to HYTA and this Court's decision in *People v Bobek*, 217 Mich App 524; 553 NW2d 18 (1996). The State now challenges this ruling on appeal.

## II. CLOSED PROCEEDINGS UNDER § 14(4) OF HYTA

The State first argues that the trial court erred by ordering that the proceedings would be closed to the public.[1]

"The interpretation and application of a statute presents a question of law that the appellate court reviews de novo." *People v Lewis*, 302 Mich App 338, 341; 839 NW2d 37 (2013). The Legislature's intent, as expressed in the statutory language, controls the interpretation of statutes. *Id.*

---

[1] As an initial matter, two defendants argue that the prosecution waived review of this issue because the State declined to argue the matter further, and conceded that the hearing could proceed, once the trial court made its ruling to close the proceedings. The record reveals that the State initially opposed closing the proceedings in the first defendant's hearing, and this argument was expressly incorporated into the record of the hearings. Waiver is the "intentional relinquishment or abandonment of a known right," which precludes appellate review because the "waiver has extinguished any error." *People v Carter*, 462 Mich 206, 215; 612 NW2d 144 (2000) (quotation marks and citations omitted). Applying that standard to this record, we conclude that the State did not waive appellate review of the issue by refraining from further argument after the trial court had already ruled on the matter. The record does not reflect that the State expressed satisfaction with the trial court's ruling but instead merely recognized that the trial court had issued its ruling. That is not a waiver. See *id*. at 219 (concluding that counsel had effectuated a waiver by "clearly express[ing] satisfaction with the trial court's decision).

"HYTA is essentially a juvenile diversion program for criminal defendants under the age of 21." *People v Dipiazza*, 286 Mich App 137, 141; 778 NW2d 264 (2009). "An assignment to youthful trainee status does not constitute a conviction of a crime unless the court revokes the defendant's status as a youthful trainee." *Id.*; see also MCL 762.12; MCL 762.14. "If the defendant's status is not revoked and the defendant successfully completes his or her assignment as a youthful trainee, the court 'shall discharge the individual and dismiss the proceedings.' " *Dipiazza*, 286 Mich App at 142, quoting MCL 762.14(1). MCL 762.14(2) provides that "except as provided in subsection (3), [which is a subsection that is not implicated in this case,] "the individual assigned to the status of youthful trainee shall not suffer a civil disability or loss of right or privilege following his or her release from that status because of his or her assignment as a youthful trainee." "Once compliance is achieved, a youthful trainee will not be deemed convicted of a crime and proceedings regarding the disposition of the criminal charge will be closed to public inspection." *Bobek*, 217 Mich App at 529. HYTA "is a remedial statute and should be construed liberally for the advancement of the remedy." *Id*.

At issue in this appeal is the provision of HYTA concerning closing proceedings, which is contained in MCL 762.14(4) and provides:

> Unless the court enters a judgment of conviction against the individual for the criminal offense under section 12 of this chapter, all proceedings regarding the disposition of the criminal charge and the individual's assignment as youthful trainee shall be closed to public inspection, but shall be open to the courts of this state, the department of corrections, the family independence agency, law enforcement personnel and, beginning January 1, 2005, prosecuting attorneys for use only in the performance of their duties.

The State argues that this statute should be "interpreted to only close proceedings from public view *after* the individual has successfully completed the terms of their sentence and been discharged from youthful trainee status." Applying their analysis, the State argues that the trial court therefore erred by entering the order closing the proceedings during the course of defendants' probation review hearings and while defendants were still serving their sentences of probation. However, the State's argument is at odds with this Court's holding in *Bobek*, 217 Mich App at 528-530, wherein we stated that MCL 762.14(4) means that *all matters and hearings* brought before the court in a case after the defendant had been assigned youthful trainee statutes are to be closed to the public. The *Bobek* Court reasoned as follows:

> The term "proceeding" apparently encompasses all matters brought before a court in a specific judicial action. When a hearing is conducted after the grant of youthful trainee status, closure of the hearing would be necessary to enforce the confidentiality provision of the act. Thus, it appears that the Legislature envisaged the term "all proceedings" as meaning *all* matters brought before a court in an action in which youthful trainee status has been granted. [*Bobek*, 217 Mich App at 530.]

In this case, the trial court granted defendants youthful trainee status at defendants' sentencing hearings on March 1, 2018. Accordingly, the probation review hearings at issue, which occurred in August 2018, are considered proceedings that must be closed to the public

pursuant to MCL 762.14(4), and the trial court did not err by closed these matters to the public. *Bobek*, 217 Mich App at 530.

Nonetheless, the State further contends that the probation review hearings were not required to be closed to the public under MCL 762.14(4) because they were not "proceedings regarding the *disposition* of the criminal charge." Here, the argument of the State is: "disposition" of the criminal charge refers to the end of the case when the individual is released from youthful trainee status and the proceedings are dismissed. See MCL 762.14(1)("If consideration of an individual as a youthful trainee is not terminated and the status of youthful trainee is not revoked as provided in section 12 of this chapter, upon final release of the individual from the status as youthful trainee, the court shall discharge the individual and dismiss the proceedings.").

However, this argument is unpersuasive. Review of the statutory language reveals no indication in the statute that the mandate to "discharge the individual and dismiss the proceedings" once the individual is released from youthful trainee status, contained in § 14(1), also serves to define the term "disposition" in § 14(4). Rather, this term is part of the phrase that this Court has determined refers broadly to all hearings in the matter after youthful trainee status has been granted so as to effectively "enforce the confidentiality provision of the act." *Bobek*, 217 Mich App at 530. Moreover, the probation review hearings necessarily related to defendants' "assignment as youthful trainee[s]" because defendants were sentenced to probation after the trial court granted defendants youthful trainee status. Thus, the hearings were "proceedings regarding . . . the individual[s'] assignment as youthful trainee[s]," and under the plain language of the statute, the trial court did not err by closing the proceedings to the public. MCL 762.14(4); *Bobek*, 217 Mich App at 530.

The State additionally argues that MCL 762.14(4) does not apply in this case, and the trial court therefore did not have the authority to close the proceedings, because the probation review hearings were actually conducted under MCL 803.223 and MCR 6.935 rather than under HYTA.

MCL 803.223 provides as follows:

> If a juvenile is committed to a juvenile facility, the department or county juvenile agency, as applicable, shall prepare for the court that committed the juvenile an annual report stating the services being provided to the juvenile, where the juvenile has been placed, and the juvenile's progress in that placement.

MCR 6.935 provides as follows:

> (A) General. When a juvenile is placed on probation and committed to a state institution or agency, the court retains jurisdiction over the juvenile while the juvenile is on probation and committed to that state institution or agency. The court shall review the progress of a juvenile it has placed on juvenile probation and committed to state wardship.
>
> (B) Time.

-4-

(1) Semiannual Progress Reviews.  The court must conduct a progress review no later than 182 days after the entry of the order placing the juvenile on juvenile probation and committing the juvenile to state wardship.  A review shall be made semiannually thereafter as long as the juvenile remains in state wardship.

(2) Annual Review.  The court shall conduct an annual review of the services being provided to the juvenile, the juvenile's placement, and the juvenile's progress in that placement.

(C) Progress Review Report.  In conducting these reviews, the court shall examine the progress review report prepared by the Family Independence Agency, covering placement and services being provided the juvenile and the progress of the juvenile, and the court shall also examine the juvenile's annual report prepared under MCL 803.223 (§ 3 of the Juvenile Facilities Act).  The court may order changes in the juvenile's placement or treatment plan including, but not limited to, committing the juvenile to the jurisdiction of the Department of Corrections, on the basis of the review.

(D) Hearings for Progress and Annual Reviews.  Unless the court orders a more restrictive placement or treatment plan, there shall be no requirement that the court hold a hearing when conducting a progress review for a court-committed juvenile pursuant to MCR 6.935(B).  However, the court may not order a more physically restrictive change in the level of placement of the juvenile or order more restrictive treatment absent a hearing as provided in MCR 6.937.

Contrary to the State's argument, MCL 803.223 and MCR 6.935 do not support the argument that the probation review hearings must automatically remain public because MCR 6.935(D) specifically states that a hearing is not required *at all* when conducting a progress review (unless the court orders a more restrictive placement or treatment plan).  Furthermore, both MCL 803.223 and MCR 6.935 are silent regarding HYTA, and neither MCL 803.223 nor MCR 6.935 prohibit closing proceedings to the public.  MCL 762.14(4) being the provision that more specifically applies to defendants who, as in this case, are juveniles who have been assigned youthful trainee status under HYTA, MCL 762.14(4) controls over MCL 803.223 and MCR 6.935 with respect to closing the proceedings.  See *People v Arnold*, 502 Mich 438, 472; 918 NW2d 164 (2018) ("When a general intention is expressed, and also a particular intention, which is incompatible with the general one, the particular intention shall be considered an exception to the general one.") (quotation marks and citation omitted); see also *People v Lacalamita*, 286 Mich App 467, 472; 780 NW2d 311 (2009) ("When interpreting a court rule, this Court applies the same rules as when we engage in statutory interpretation.") (quotation marks and citation omitted).

The State also argues that MCR 3.925(A)(1) required the proceedings to be open to the public.  MCR 3.925(A) provides as follows:

(A) Open Proceedings.

(1) General. Except as provided in subrule (A)(2), juvenile proceedings on the formal calendar and preliminary hearings shall be open to the public.

(2) Closed Proceedings; Criteria. The court, on motion of a party or a victim, may close the proceedings to the public during the testimony of a child or during the testimony of the victim to protect the welfare of either. In making such a determination, the court shall consider the nature of the proceedings; the age, maturity, and preference of the witness; and, if the witness is a child, the preference of a parent, guardian, or legal custodian that the proceedings be open or closed. The court may not close the proceedings to the public during the testimony of the juvenile if jurisdiction is requested under MCL 712A.2(a)(1).

Even if we were to presume this court rule applicable, it is nonetheless silent as to the more specific class of individuals to which defendants belong: juveniles who have been assigned youthful trainee status under HYTA. As such, for the reasons cited above, MCL 762.14(4) controls, *Arnold*, 502 Mich at 472.

## III. CONSTITUTIONALITY OF MCL 762.14(4)

The State argues that MCL 762.14(4) is unconstitutional as applied because it requires a closed hearing without balancing the interests of the public to an open hearing.

"The constitutionality of a statute is a question of law, reviewed de novo on appeal." *People v Roberts*, 292 Mich App 492, 496; 808 NW2d 290 (2011) (quotation marks and citation omitted). "We presume statutes to be constitutional unless their unconstitutionality is clearly apparent and, if possible, the statute is to be construed as constitutional." *People v Deroche*, 299 Mich App 301, 305; 829 NW2d 891 (2013). The burden is on the party challenging the statute's constitutionality to prove its invalidity. *People v Sadows*, 283 Mich App 65, 67; 768 NW2d 93 (2009).

However, although the State argued in the trial court that the public had a First Amendment right to attend the proceedings, the State did not argue in the trial court that MCL 762.14(4) violated this constitutional right held by the public. By not challenging the constitutional validity of the statute in the trial court, the State failed to preserve this argument for appeal. *People v Sands*, 261 Mich App 158, 160; 680 NW2d 500 (2004); see also *People v Stimage*, 202 Mich App 28, 30; 507 NW2d 778 (1993) ("An objection based on one ground at trial is insufficient to preserve an appellate attack based on a different ground."). Therefore, our review of this unpreserved constitutional issue is for plain error. *Sands*, 261 Mich App at 160. "To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999).

Our Supreme Court has explained the general relationship between a defendant's Sixth Amendment right to a public trial and the concurrent First Amendment right held by the public to attend criminal trials:

The right to a public trial "has its roots in our English common law heritage." The Sixth Amendment of the United States Constitution expressly

enumerates this right and states that a criminal defendant "shall enjoy the right to a . . . public trial . . . ." The Sixth Amendment right to a public trial is incorporated to the states by the Due Process Clause of the Fourteenth Amendment. Additionally, article 1, § 20 of the 1963 Michigan Constitution guarantees that a criminal defendant "shall have the right to a . . . public trial . . . ." That the right to a public trial also encompasses the right to public voir dire proceedings is "well settled."

Although the Sixth Amendment right "is the right of the accused," a member of the public can invoke the right to a public trial under the First Amendment. "The extent to which the First and Sixth Amendment public trial rights are coextensive is an open question, and it is not necessary here to speculate whether or in what circumstances the reach or protections of one might be greater than the other." The existence of this implied First Amendment right enjoyed by members of the public precludes a criminal defendant from enjoying a constitutional right to a *private* trial, even if he waives his Sixth Amendment right to a public trial. [*People v Vaughn*, 491 Mich 642, 650-652; 821 NW2d 288 (2012) (some citations omitted; ellipses in original).]

In this case, we are solely concerned with the right of access held by the public and protected by the First Amendment.

In determining whether a qualified First Amendment right of access attaches to a criminal proceeding, the United States Supreme Court has emphasized two complementary considerations. *Press-Enterprise Co v Superior Court*, 478 US 1, 13; 106 S Ct 2735; 92 L Ed 2d 1 (1986) (*Press-Enterprise II*). See also *Booth Newspapers*[*, Inc v Twelfth Dist Court Judge*, 172 Mich App 688; 432 NW2d 400 (1988)]. The first is whether the place and process at issue have historically been open to the press and general public. Secondly, there is the consideration "whether public access plays a significant positive role in the functioning of the particular process in question." *Press-Enterprise II*, [478 US] at 8; *Booth Newspapers*, [172 Mich App 688]. If both questions are answered in the affirmative, a qualified right of access applies to the proceeding, and that proceeding may not be closed unless specific findings are made that " 'closure is essential to preserve higher values and is narrowly tailored to serve that interest.' " *Press-Enterprise II*, [478 US] at 13-14, quoting *Press-Enterprise Co v Superior Court*, 464 US 501, 510; 104 S Ct 819; 78 L Ed 2d 629 (1984) (*Press-Enterprise I*). [*Detroit News, Inc v Recorder's Court Judge (After Remand)*, 202 Mich App 595, 600-601; 509 NW2d 894 (1993), aff'd in relevant part sub nom by *People v Atkins*, 444 Mich 737 (1994).]

This Court has adopted the *Press-Enterprise II* test. *Detroit News*, 202 Mich App at 599 n 2.

Under the first prong of the *Press-Enterprise II* test, we first note that the proceedings at issue were not a criminal trial (or any form of proceeding that resembled a trial in any significant way) involving an adult defendant. A trial is the quintessential example of criminal proceedings that are traditionally open to the public. See, e.g., *Press-Enterprise I*, 464 US at 505 ("[A]t the

time when our organic laws were adopted, criminal trials both here and in England had long been presumptively open.") (quotation marks and citation omitted). Instead, the instant proceedings at issue were post-plea, probationary review hearings involving juvenile defendants[2] who had been assigned youthful trainee status under HYTA. However, we stress that our analysis on this issue should not be interpreted as an all-encompassing statement that the First Amendment attaches only to "trials." We recognize that the First Amendment right to public access is not strictly limited to "trials." See, e.g., *Press-Enterprise II*, 478 US at 7 (concluding with respect to a preliminary hearing that "the First Amendment question cannot be resolved solely on the label we give the event, i.e., 'trial' or otherwise, particularly where the preliminary hearing functions much like a full-scale trial"). Rather, for purposes of our analysis, we deem it necessary to distinguish the nature of the instant proceedings which involved juveniles who had been assigned youthful trainee status under HYTA because such facts are decidedly significant.

The United States Supreme Court has recognized that "[f]rom the inception of the juvenile court system, wide differences have been tolerated—indeed insisted upon—between the procedural rights accorded to adults and those of juveniles." *In re Application of Gault*, 387 US 1, 14; 87 S Ct 1428; 18 L Ed 2d 527 (1967). The *Gault* Court noted that the juvenile court movement began in the United States near the end of the nineteenth century. *Id*. The Court further stated that the early proponents of this movement "were profoundly convinced that society's duty to the child could not be confined by the concept of justice alone" and "believed that society's role was not to ascertain whether the child was 'guilty' or 'innocent,' but 'What is he, how has he become what he is, and what had best be done in his interest and in the interest of the state to save him from a downward career.' " *Id*. at 15 (citation omitted). There was an emphasis on treatment and rehabilitation rather than punishment. *Id*. at 15-16. The Court also recognized the underlying general policy in the juvenile system to attempt to "hide youthful errors from the full gaze of the public and bury them in the graveyard of the forgotten past." *Id*. at 24 (quotation marks and citation omitted). The *Gault* Court held that despite these aims, juveniles were still entitled to "the essentials of due process and fair treatment" with respect to a juvenile court adjudications, *id*. at 30-31 (quotation marks and citation omitted), but the Court also clarified that such due process protections nonetheless would not negate the beneficial aspects of the juvenile court system and, more specifically, would not prevent a state from continuing "to provide and to improve provision for the confidentiality of records of police contacts and court action relating to juveniles," *id*. at 20-28.

In Michigan, HYTA is similarly designed to give juveniles a second chance by giving them an opportunity to avoid having a criminal record and keeping the proceedings closed to public inspection. *Bobek*, 217 Mich App at 528-530. Under HYTA, provided certain conditions not at issue in this appeal are met, the trial court may assign an individual who has pleaded guilty to a criminal offense to youthful trainee status without entering a judgment of conviction. MCL 762.11. Successful completion results in dismissal of the proceedings. MCL 762.14(1); *Dipiazza*, 286 Mich App at 142; *Bobek*, 217 Mich App at 528-529. As the *Gault* Court also

---

[2] Defendants were each either 14 or 15 years old at the time of the underlying offense conduct that led to the charges in this case.

recognized, "The problems of pre-adjudication treatment of juveniles, and of post-adjudication disposition, are unique to the juvenile process." *Gault*, 387 US at 31 n 48.

We note further that the State has not cited any legal authority for the proposition that proceedings involving juveniles have historically been open to the public. We discern this lack of citation to have occurred because none exist as it appears the opposite is true. *Id*. at 14-16, 24; see also *In re Oliver*, 333 US 257, 266 n 12; 68 S Ct 499; 92 L Ed 682 (1948) ("Whatever may be the classification of juvenile court proceedings, they are often conducted without admitting all the public."). Furthermore, under the second prong of the *Press-Enterprise II* test, there is no indication that the public plays a significant role in the function of the hearings at issue, and the State has not provided us any legal authority that would allow us to reach a contrary conclusion. As we have already discussed, keeping the proceedings at issue open to the public would defeat the rehabilitative aims of HYTA. See *Bobek*, 217 Mich App at 530; see also *Gault* 387 US at 14-16, 24-25.

For the reasons set forth above, we conclude that the State has failed to demonstrate that plain error occurred and has failed to meet its burden of demonstrating that MCL 762.14(4) is unconstitutional as applied. Accordingly, we affirm the judgment of the trial court.

Affirmed.

/s/ Stephen L. Borrello
/s/ Kirsten Frank Kelly
/s/ Deborah A. Servitto