*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

DEPARTMENT OF TRANSPORTATION,

        Plaintiff-Appellee,

v

330 SOUTH LIVERNOIS LLC,

        Defendant-Appellee,

and

JOHN JOHNSON COMPANY, DTE ELECTRIC
COMPANY, DEPARTMENT OF DETROIT
WATER AND SEWERAGE, CITY OF DETROIT,
MORTON INDUSTRIAL GROUP INC., ROSS
AND EVANS CONSTRUCTION INC., FORT
IRON & METAL COMPANY, VITEC LLC,
HUNTINGTON NATIONAL BANK, WAYNE
COUNTY TREASURER, 260 S CRAWFORD LLC,
ALLEN DAVID BAKER, TRACEY BAKER,
DEPARTMENT OF ENVIRONMENTAL
QUALITY, STEPHEN ROSS, and KAUTEX INC.,

        Defendants,

and

DTE ENERGY COMPANY,

        Appellant.

UNPUBLISHED
December 21, 2023

No. 363181
Wayne Circuit Court
LC No. 17-005036-CC

Before: JANSEN, P.J., and CAVANAGH and GADOLA, JJ.

PER CURIAM.

-1-

In this lengthy discovery battle, nonparty, DTE Energy Company (DTE), appeals by leave granted[1] the trial court's May 9, 2022 production and protective order and September 23, 2022 order holding it in contempt. DTE contends the trial court erred in requiring it to produce irrelevant material and material protected by the attorney-client privilege to defendant, 330 South Livernois LLC (330 South), in an eminent domain action. We agree. 330 South has engaged in an improper and unfounded fishing expedition for far too long, and the trial court erred in requiring DTE to produce tens of thousands of documents containing irrelevant and privileged matter. We therefore vacate the challenged orders and remand for further proceedings consistent with this opinion.

## I. BACKGROUND

In March 2017, the Department of Transportation (DOT) filed an eminent domain action against 330 South to take land for use in the Gordie Howe International Bridge Project. DOT and 330 South engaged expert appraisers to determine the value of the property for just-compensation purposes. DOT's appraiser valued the property at $5.5 million and DOT remitted that amount to 330 South. Based on information from 330 South's owners, 330 South's appraiser determined the property had access to a uniquely high amount of electrical power, rendering the property much more valuable—at $12.6 million.

Shocked by 330 South's valuation, DOT contacted DTE to verify the information 330 South's appraiser relied on. John Ferencz, DTE's Primary Service Representative for Southwest Detroit, signed an affidavit stating 330 South owned the electrical transformers, breakers, and other electrical distribution equipment on the property. The antiquated equipment would have needed to be replaced at great cost to 330 South before a high level of electrical power could be brought to the property. Ferencz asserted although five electrical feeds previously brought power to the property, three had been "decommissioned," and the remaining two could only be run one at a time. Ferencz's use of the term "decommissioned" was inaccurate. Decommissioned lines are physically removed. The lines in question had been "abandoned," meaning they were not maintained and no electricity was transferred through them. Still, the lines could only be used after significant and costly repairs.

Ferencz's mistaken language led to a nearly two-year-long discovery battle. 330 South issued a subpoena to DTE seeking discovery of:

1. Any and all service records for the property previously located at 340 S. Livernois, Detroit, Michigan as identified in Paragraph 4 of the attached Affidavit of John Ferencz.

2. Any and all maintenance records for the property previously located at 340 S. Livernois, Detroit, Michigan as indicated in Paragraph 4 of the attached Affidavit of John Ferencz.

---

[1] *Dep't of Transp v 330 S Livernois LLC*, unpublished order of the Court of Appeals, entered October 5, 2022 (Docket No. 363181).

3. Any and all records regarding the decommissioning by DTE of three feeds to 340 S. Livernois, Detroit, [Michigan] as indicated by Paragraph 9 of the attached Affidavit of John Ferencz.

4. Any and all notices to the owner of 340 S. Livernois, Detroit, Michigan related to the decommissioning of electrical feeds or service feeds to 340 S. Livernois, Detroit, Michigan as indicated by Paragraph 9 of the attached Affidavit of John Ferencz.

5. Any and all costs associated with commissioning one or more new primary service feeds to 340 S. Livernois, Detroit, Michigan as indicated in Paragraph 15 of the attached Affidavit of John Ferencz.

6. Any and all documents related to the amount of available power, in terms of MVA to 340 S. Livernois, Detroit, Michigan on March 30, 2017.

7. Any and all communications between DTE and the owner or representative of 340 S. Livernois, Detroit, Michigan.

8. Any and all communications between John Ferencz and any representative of the [DOT] regarding 340 S. Livernois, Detroit, Michigan.

9. Any and all communications between DTE and any representative of the [DOT] related to 340 S. Livernois, Detroit, Michigan.

Because DTE was not a party to the eminent domain lawsuit, it was not interested in using its time and money to comply with this subpoena. 330 South interpreted DTE's hesitance and the inaccuracy of Ferencz's affidavit as evidence that DTE was colluding with DOT to artificially deflate the value of its property. Over the next two years, 330 South filed four motions to compel against DTE and two motions to hold DTE in contempt.

In response to 330 South's first motion to compel, DTE stipulated to an order entered on May 31, 2021. That order required DTE to provide unredacted versions of documents already provided, to conduct a search of its electronically stored information (ESI) to locate material responsive to the subpoena, and to present Ferencz for a deposition. We note that although DTE offered Ferencz for a deposition, 330 South never followed through. DTE also waived "objections to the Subpoena based on attorney-client privilege." DTE presented very little material to 330 South after this order, leading to further discovery battles. Throughout the summer and fall of 2021, DTE and 330 South negotiated search terms for DTE's electronic discovery. By October 2021, these broad search terms uncovered 87,000 documents or pages of documents.[2]

The large number of discovery "hits" intensified the discovery battle. DTE sought to pare down the number of documents using terms to narrow the field. It wanted to withhold material

---

[2] DTE's counsel was uncertain whether his client had uncovered 87,000 documents or pages of documents.

-3-

irrelevant to the matters raised in the November 2, 2020 subpoena, material that was proprietary or contained trade secrets, and material that was protected by the attorney-client privilege. DTE wanted 330 South to advance the costs for hiring a third-party document review firm to screen the voluminous materials. 330 South wanted DTE to turn over all 87,000 documents or pages of documents without review.

On December 21, 2021, and in response to 330 South's second and third motions to compel, the trial court entered an order precluding DOT from challenging 330 South's valuation based on available power as a penalty for DTE's failure to turn over discovery. This Court peremptorily reversed that order. *Mich Dep't of Transp v 330 S Livernois LLC*, unpublished order of the Court of Appeals, entered February 17, 2022 (Docket No. 359928).

On remand, 330 South continued to seek full discovery of the 87,000 documents or pages of documents under a protective order requiring the documents to be marked "confidential." Full discovery was required, in 330 South's opinion, because there remained evidence DTE and DOT were acting in collusion and DTE was withholding documents regarding the true amount of power available at the property. DTE continued to argue that 330 South was not entitled to discovery of irrelevant material that was not responsive to the November 2, 2020 subpoena, and claimed the evidence sought by 330 South simply did not exist.

On May 9, 2022, the court entered an order stating, in relevant part:

> 1. The Protective Order is adopted and shall be submitted for entry, subject to the specific edits and date restriction (for now, DTE does not have to produce any documents or files created after September 10, 2021) set forth by the Court and agreed upon by the parties and DTE Energy.
>
> 2. For purposes of the Protective Order, it shall be permissible for DTE to designate all the approximately 87,000 documents or files resulting from the ESI protocol search related to the November 2, 2020 subpoena to DTE Energy (the "Office 365 Production") as "confidential" under the Protective Order.
>
> 3. DTE's request for the assessment of costs as set forth [] in the DTE Motion is held in abeyance pending the hearing that will take place April 29, 2022 on the two pending discovery motions filed by 330 South and DTE Energy (the "DTE-related Discovery Motions"), respectively.
>
> 4. All objections by [DOT] and/or DTE that are inconsistent with this Order are overruled.
>
> 5. Without prejudice to the ongoing frustration of 330 South due to DTE's alleged untimely production of the Office 365 Production, DTE shall produce, electronically, the Office 365 Production in their near native format as soon as practicable. The Court's ruling on the record on March 22, 2022 was that the Office 365 Production would be produced by DTE within fourteen (14) days of entry of this Order. However, this order states the documents shall be produced "as soon as practicable" instead of "within fourteen (14) days of this order" as the issue of the

-4-

timing of DTE's production is preserved. The language of this order shall not be misunderstood as a modification of the Court's oral ruling.

DTE hired a third-party law firm to conduct the document review. The firm divided the 87,000 documents or pages of documents into three categories: (1) responsive to the subpoena, (2) unresponsive to the subpoena, and (3) protected by attorney-client privilege. DTE reviewed the privileged materials and produced to 330 South all materials responsive to the subpoena, even if otherwise protected by privilege. 330 South objected to the presentation of only 11,000 documents or pages of documents. It filed a fourth motion to compel and a second motion to hold DTE in contempt for violation of various court orders.

On September 23, 2022, the court entered an order holding DTE in contempt, but only for violation of the May 9, 2022 order. The court ordered it would not conduct a hearing to consider consequences against DTE as long as DTE "voluntarily" produced all 87,000 documents or pages of documents. This appeal followed.

## II. DISCOVERY OF PRIVILEGED MATERIAL

DTE first contends that the trial court improperly ordered it to produce irrelevant documents protected by the attorney-client privilege. We agree.

We review for an abuse of discretion a trial court's decision to grant or deny discovery. *Reed Dairy Farm v Consumers Power Co*, 227 Mich App 614, 616; 576 NW2d 709 (1998). A trial court abuses its discretion when its ruling falls outside the range of reasonable and principled outcomes. *Woods v SLB Prop Mgt, LLC*, 277 Mich App 622, 625; 750 NW2d 228 (2008). "Whether the attorney-client privilege may be asserted is a legal question that this Court reviews de novo." *Reed Dairy Farm*, 227 Mich App at 618. We also review de novo a lower court's determination whether a party has waived the privilege. *Citizens Ins Co of America v Livingston County Rd Comm'n*, ___ Mich App ___, ___; ___ NW2d ___ (2022) (Docket No. 356294); slip op at 6.

MCR 2.305(A)(1) permits a party to subpoena information from a nonparty. *Micheli v Mich Auto Ins Placement Facility*, 340 Mich App 360, 372; 986 NW2d 451 (2022). MCR 2.302(B)(1) provides for

> discovery regarding any *non-privileged* matter that is *relevant* to any party's claims or defenses and *proportional to the needs of the case*, taking into account all pertinent factors, including whether the burden or expense of the proposed discovery outweighs its likely benefit, the complexity of the case, the importance of the issues at stake in the action, the amount in controversy, and the parties' resources and access to relevant information. Information within the scope of discovery need not be admissible in evidence to be discoverable. [Emphasis added.]

"Michigan has long supported a policy of far-reaching, open, and effective discovery practice. Discovery rules must be liberally construed to further the ends of justice." *In re CADP*, 341 Mich App 370, 380; 990 NW2d 386 (2022) (quotation marks and citations omitted). Privilege is one limit on the otherwise broad discovery policy.

This Court described the attorney-client privilege in *Reed Dairy Farm*, 227 Mich App at 618-619:

> The attorney-client privilege attaches to direct communication between a client and his attorney as well as communications made through their respective agents. The scope of the attorney-client privilege is narrow, attaching only to confidential communications by the client to his advisor that are made for the purpose of obtaining legal advice. Where an attorney's client is an organization, the privilege extends to those communications between attorneys and all agents or employees of the organization authorized to speak on its behalf in relation to the subject matter of the communication. [Citations omitted.]

The trial court interpreted the May 31, 2021 stipulated order as a blanket waiver of DTE's attorney-client privilege. Paragraph 3 of that order states: "DTE waives objections to the Subpoena based on attorney-client privilege, but objections based on trade secrets or proprietary information are preserved (subject to 330 South's challenge) and a privilege log will be produced along with the supplemental production[.]"

A waiver of the attorney-client privilege requires "an intentional, voluntary act." *Leibel v Gen Motors Corp*, 250 Mich App 229, 241; 646 NW2d 179 (2002) (quotation marks and citation omitted). "When analyzing whether a privilege has been waived, 'a court should begin its analysis with a presumption in favor of preserving the privilege.' " *Citizens Ins Co*, ___ Mich App at ___; slip op at 6, quoting *Howe v Detroit Free Press, Inc*, 440 Mich 203, 221-222; 487 NW2d 374 (1992). The party contending its opponent waived the attorney-client privilege bears the burden of "demonstrat[ing] that the material to be discovered is relevant and that the party's assertion of the privilege seriously undermined the other party's position." *Citizens Ins Co*, ___ Mich App at ___; slip op at 6-7, citing *Howe*, 440 Mich at 225-226. When a "court permits discovery of [] privileged material, it 'should be narrowly limited to those portions of the privileged material that bear directly on the issues at hand.' " *Citizens Ins Co*, ___ Mich App at ___; slip op at 7, quoting *Howe*, 440 Mich at 223. Permitting discovery of privileged material " 'does not mean that [the requesting party] should receive wholesale access to the confidential records of others.' " *Citizens Ins Co*, ___ Mich App at ___; slip op at 7, quoting *Howe*, 440 Mich at 223-224.

The plain language of the May 31, 2021 stipulated order states DTE waived the attorney-client privilege related to the November 2, 2020 subpoena only. At the July 27, 2021 hearing, the trial court acknowledged the May 31, 2021 order was limited to discovery directly flowing from the subpoena. DTE argued against the imposition of discovery sanctions because the ESI search protocol was "something outside of what the subpoena and order was." The court responded:

> I could [sic: would] prefer not to have to reach the issue of sanctions out of an abundance of caution, because of the situation like this, when there's not been a production meeting and where certain search terminology was misspelled there's a high likelihood that there is relevant discoverable information that was omitted.

The ESI search terms provided by 330 South went well beyond the issues in the subpoena. The search terms included bitcoin, marijuana, cannabis, and Fort Iron (another defendant in the eminent domain action). The subpoena, on the other hand, sought service, maintenance, and

-6-

decommission records regarding electrical power at the property; notices to the property owners regarding decommissioning of the lines; information about the cost of recommissioning lines to the property; documents related to power available on the property; and communications between DTE and the property owners, Ferencz and DOT regarding this property, and DTE and DOT regarding this property.

Fort Iron is an entity separate and distinct from 330 South. The terms bitcoin, marijuana, and cannabis are relevant to determining the value the property might have if transformed for other uses. However, these terms have nothing to do with the nine categories of information sought by the subpoena. When DTE waived its attorney-client privilege, by the waiver's plain language, it was limited to information pertaining to the nine subpoena categories and DTE would have no idea future discovery would go so far afield. DTE effectuated no further waiver of its attorney-client privilege. The trial court erred in ruling otherwise and ordering full discovery of irrelevant privileged material.

DTE indicated it produced material relevant to the nine subpoena categories even though it was otherwise protected by attorney-client privilege and withheld material that was nonresponsive, whether privileged or not, after the third-party document review. Should 330 South continue to believe more relevant material is contained within the withheld privileged documents, it could request an *in camera* review on remand. See *Citizens Ins Co*, ___ Mich App at ___; slip op at 8.

As already recognized by the trial court, a protective order could at least ensure any nonresponsive privileged material would not be distributed beyond the parties to this litigation. The court further limited discovery to materials created before September 11, 2021, to protect against an alleged conflict of interest on 330 South's legal team. However, the court approached the dispute based on an incorrect legal finding. On remand, the trial court may again determine whether a protective order suffices to protect the privileged information even though the attorney-client privilege was not completely waived.

## III. DISPROPORTIONAL AND IRRELEVANT DISCOVERY

DTE also contends the trial court erroneously required the discovery of irrelevant material that was out of proportion to the issues in this case in violation of MCR 2.302(B)(1). We again agree.

In *Hamed v Wayne Co*, 271 Mich App 106, 109-110; 719 NW2d 612 (2006), this Court described:

> Michigan has long espoused a liberal discovery policy that permits the discovery of any matter, not privileged, that is relevant to the subject matter involved in the pending case. MCR 2.302(B)(1); [*Reed Dairy Farm*, 227 Mich App at 616]. The purpose of discovery is to simplify and clarify the contested issues, which is necessarily accomplished by the open discovery of all relevant facts and circumstances related to the controversy. See *id*., citing *Domako v Rowe*, 438 Mich 347, 360; 475 NW2d 30 (1991). However, the court rules also ensure that discovery requests are fair and legitimate by providing that discovery may be circumscribed

to prevent excessive, abusive, irrelevant, or unduly burdensome requests. MCR 2.302(C); *Cabrera v Ekema*, 265 Mich App 402, 407; 695 NW2d 78 (2005); *In re Hammond Estate*, 215 Mich App 379, 386; 547 NW2d 36 (1996).

As conceded by DTE, the threshold for relevance is low. MRE 401 broadly defines "[r]elevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." "The term 'relevant' means 'having practical value or applicability' or 'bearing on the matter at hand; pertinent.' " *McClellan v Collar*, 240 Mich App 403, 410; 613 NW2d 729 (2000), quoting *Random House Webster's College Dictionary* (1997). If evidence does not have some relevance to the litigation, a court acts within its discretion in denying a motion to compel discovery of it. *Hartmann v Shearson Lehman Hutton, Inc*, 194 Mich App 25, 29-30; 486 NW2d 53 (1992).

"However, Michigan's commitment to open and far-reaching discovery does not encompass fishing expedition[s]. Allowing discovery on the basis of conjecture would amount to allowing an impermissible fishing expedition." *Augustine v Allstate Ins Co*, 292 Mich App 408, 419-420; 807 NW2d 77 (2011) (quotation marks and citations omitted, alteration in original).

The amount of discovery ordered was not out of proportion with the needs of this case. DOT valued the property at $5.5 million and 330 South at $12.6 million. This was a high stakes case and requiring significant discovery would not be outside the range of reasonable and principled outcomes. Indeed, on remand, discovery will continue as several depositions still need to be conducted.

However, the record is full of examples of completely irrelevant documents being included within the 87,000 documents or pages of documents produced in the ESI search. Those documents included "thousands of pages" related to "DTE's wind projects, other DTE projects, DTE purchases and sales of property amongst other energy companies, financial forecasts, proprietary internal programs, Government submissions, job descriptions and resume[s] of job applicants," as well as irrelevant employee forms acknowledging DTE's marijuana use policy.

330 South did not contest that irrelevant documents were uncovered during the ESI search. Rather, it insisted the irrelevant documents should be produced and a protective order issued. Protective orders are not meant to justify unlimited discovery. The court rule provides for entry of a protective order "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." MCR 2.302(C). Here, a nonparty spent almost two years and thousands of dollars trying to gather the discovery requested, review 87,000 documents or pages of documents for relevance and privilege, and enforce its right to withhold irrelevant and privileged material. This is the opposite of what a protective order does.

330 South speculated DTE had documents establishing collusion between it and DOT to fabricate the level of power available to the property at the time of the taking. Approximately 11,000 documents, including service and maintenance records and e-mails, were produced with no such evidence coming to light. Instead, documents were produced showing DTE notified the property owner in 2006, only six MVA of power was available to the property, several electrical lines leading to the property had failed and were never reactivated, and 330 South owned the

antiquated electrical equipment on the property, not DTE. There is no merit to the assertion of counsel for 330 South at oral argument that correspondence between DOT and DTE regarding the affidavit of Ferencz established evidence of collusion. 330 South had the opportunity to depose Ferencz, but never did. Moreover, 330 South produced no expert opinion in the trial court to challenge the Ferencz affidavit.[3] Without more support of its allegation of collusion, 330 South is not entitled to such broad discovery as ordered by the trial court.

Further, by the time of the September 23, 2022 order, the documents had been reviewed by an impartial third-party. The relevant documents had been produced. DTE reviewed all documents deemed privileged by the third-party firm and released more documents it found relevant to 330 South. A party does not have a right to discovery of irrelevant documents under MCR 2.302(B)(1), and that was all that was left. The idea other relevant documents could be found in the withheld materials was more than speculation and conjecture; it was proven false by the third-party document review.

The trial court erred in requiring DTE to produce irrelevant, privileged material to 330 South, giving 330 South unfettered access to otherwise confidential information. 330 South has not demonstrated that it is entitled to all 87,000 documents based on an unfounded assertion of collusion between DOT and DTE. Therefore, we vacate the May 9, 2022 production and protection order. Vacation of that order demands vacation of the September 23, 2022 order holding DTE in contempt.

DTE further challenges the trial court's failure to resolve whether it would allocate the cost of discovery to 330 South. MCR 2.305(A)(1) permits a party to "issue a subpoena to a non-party for . . . production or inspection of documents." "Any request for documents" under this rule "shall indicate that the subpoenaing party will pay reasonable copying costs." MCR 2.305(A)(2). MCR 2.302(B)(6) further provides in relation to ESI discovery that "[t]he court may specify conditions for the discovery, including allocation of the expense . . . ."

The court erred in not ordering 330 South to pay "reasonable copying costs" for the production of printed hard copies of certain materials because the term "shall" in MCR 2.305(A)(2) reflects a mandatory provision. See *Ellison v Dep't of State*, 320 Mich App 169, 180; 906 NW2d 221 (2017). However, allocation of the costs of discovery, other than copying, is discretionary under MCR 2.302(B)(6), because that court rule uses the permissive term "may." See *Manuel v Gill*, 481 Mich 637, 647; 753 NW2d 48 (2008). We cannot determine if the trial court abused its discretion because it has yet to exercise its discretion in this regard. On remand, the trial court should consider this issue in the first instance.

Therefore, we vacate the May 9, 2022 production and protective order and the September 23, 2022 order holding DTE in contempt and remand for further proceedings consistent

---

[3] Counsel for 330 South asserted at oral argument that it now has an affidavit of an opposing expert, obtained after appellate briefing deadlines had passed, which counsel admitted was not part of the lower court record. As such, this affidavit is not subject to appellate review. See *Sherman v Sea Ray Boats, Inc*, 251 Mich App 41, 56; 649 NW2d 783 (2002) ("This Court's review is limited to the record established by the trial court, and a party may not expand the record on appeal.").

with this opinion. On remand, the trial court is directed to consider the allocation of discovery costs in the first instance. We do not retain jurisdiction.

/s/ Kathleen Jansen
/s/ Mark J. Cavanagh
/s/ Michael F. Gadola